IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEWISH FEDERATION OF GREATER WASHINGTON, INC. | : | |
| | : | |
| v. | : | Civil Action No. DKC 23-1816 |
| | : | |
| CINCINNATI INSURANCE COMPANY | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance coverage dispute are the motion for summary judgment filed by Plaintiff The Jewish Federation of Greater Washington, Inc. ("the Federation" or "Plaintiff"), (ECF No. 48), and the cross-motion for summary judgment filed by Defendant The Cincinnati Insurance Company ("CIC" or "Defendant"), (ECF No. 58).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion filed by Defendant will be granted, and the motion filed by Plaintiff will be denied.

**I. Background**

The history of this case is set out in full in a prior opinion. (ECF No. 62, at 1-8).  In brief,

> The Federation is a non-profit charitable organization that "serves various communities and other charitable organizations in the nation's capital region, including the District of Columbia and Maryland." (ECF No. 48, at 5). "One of the Federation's functions

> is to manage and invest funds held for the
> benefit of other Washington, D.C.-area
> charitable organizations[,]" including [ORT
> America, Inc., and the Women's American ORT
> Foundation (collectively "ORT")]. (*Id.*). The
> Federation maintains insurance. One of the
> Federation's policies was Policy Number EMN
> 044 97 53 ("CIC Policy"), a "claims made"
> policy issued by CIC for the period of August
> 15, 2017, to August 15, 2020. The CIC Policy
> includes three coverage sections: (1) General
> Provisions Applicable to All Liability
> Coverage ("General Provisions"), (2)
> Nonprofit Organization Directors and Officers
> Liability Coverage ("D&O"), and (3) Employment
> Practice Coverage. (ECF No. 58-3).
>
> The Federation was also insured under Policy
> Number 8260-9776 ("Chubb Policy"), a "claims
> made" ForeFront Portfolio For Not-for-Profit
> Organizations Policy issued by Federal
> Insurance Company with a policy period of
> August 1, 2020, to August 1, 2021. The Chubb
> Policy contains four coverage sections: (1)
> Directors & Officers Liability and Entity
> Coverage Section, (2) Employment Practices
> Liability Coverage Section, (3) Fiduciary
> Liability Coverage Section, and (4) Crime Non-
> Liability Coverage Section. (ECF No. 48-7).

(*Id.*, at 2-3).

"In or about June and July 2020, the Federation fell victim to a fraudulent scheme through which it caused four wire transfers, totaling $7,500,000, to be initiated from ORT's funds to unauthorized third-party bank accounts in Hong Kong." (*Id.* at 3). The Federation's insurance agent emailed CIC on August 12, 2020, just before the end of the policy period, to notify CIC of "wrongful acts . . . which may give rise to a management liability

2

claim." (*Id.*). In response to the unauthorized transfers, ORT "made a written demand against Plaintiff for monetary damages in the amount of $7,510,700" on September 29, 2020. (*Id.* at 6). The Federation forwarded the ORT claim to CIC on September 30, 2020. (*Id.* at 7). While the claim from ORT was received after the CIC Policy expired, the policy contained an automatic extended reporting period, which allowed the Federation to report a claim related to wrongful acts that occurred during the policy period within ninety days of the end of its policy. (*Id.* at 14). According to the CIC Policy, the extended reporting period would "immediately terminate on the effective date and time of any other insurance issued to the insureds which replaces this insurance." (*Id.*). CIC declined to provide coverage for the demand from ORT, saying that the claim was not made during either the policy period or an applicable extended reporting period. (*Id.* at 8). CIC stated that the email sent during the reporting period was insufficient notice, (*Id.* at 4), and that the extended reporting period ended when the Federation replaced the CIC Policy with the Chubb Policy. (*Id.* at 7-8). The Federation filed suit in response.

The parties previously moved for summary judgment, which the court resolved in March 2025. (ECF No. 62). The March 2025 opinion found that the email sent during the CIC policy period was

not sufficient notice, but further briefing was necessary regarding "what 'any other insurance' means or how it may affect the meaning of 'replace,'" and "whether the ORT claim is, or is not, covered by the Chubb policy." (*Id*. at 21). Plaintiff filed its supplemental brief in support of its motion for summary judgment on May 15, 2025. (ECF No. 66). Defendant filed its opposition and supplement to its cross-motion for summary judgment on June 16, 2025. (ECF No. 67). Plaintiff filed its combined reply and opposition on July 16, 2025, (ECF No. 68), and Defendant filed its reply on August 15, 2025, (ECF No. 71).

**II.  Standard of Review**

A court may grant summary judgment only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if it finds there is

a genuine dispute of material fact, "[b]ut if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Wright & Miller's Federal Practice & Procedure § 2720 (4th ed. 2022).

### III. Analysis

Following this court's earlier decision, (ECF No. 62), the only remaining issue on summary judgment is whether there was an extended reporting period in place on September 30, 2020, when the Federation sent ORT's claim to CIC.[1]  Interpretation of the CIC Policy is governed by Maryland law.  *See* (ECF No. 62, at 10-11). As this court previously explained:

> Insurance policies are interpreted according to the same rules as any other contract.  *See Rouse v. Fed. Ins. Co.*, 991 F.Supp. 460, 465 (D.Md. 1998).  Courts are instructed to interpret an insurance policy's terms "as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *United Cap. Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998) (applying Maryland law).  Neither party contends the CIC Policy is ambiguous.  *See Cap. City Real Est., LLC v.*

---

[1] The Federation purchased an optional one-year extended reporting period from CIC on October 15, 2020, with an effective date of August 14, 2020.  (ECF No. 62, at 7, ECF No. 58-3, at 3-4).  That extended reporting period is subject to the same provisions applicable to the automatic extended reporting period. Plaintiff does not contend separately that coverage is due solely because of the optional one-year extended reporting period purchased after the claim was sent, although it noted previously that, at that time, CIC "has never returned or refunded that premium." (ECF No. 60, at 7 n.2.).

5

> *Certain Underwriters at Lloyd's London, Subscribing to Pol'y No.: ARTE018240*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 101 (4th Cir. 2013) ("If the policy's language is clear and unambiguous, the court will assume the parties meant what they said.")).  On the other hand, "[i]n the event of ambiguity, Maryland courts consult extrinsic evidence, and only if this extrinsic evidence fails to clear up the ambiguity is the contract construed against the insurer." *Kapiloff*, 155 F.3d at 495.

(*Id.*).

While neither party contends that the contract is ambiguous, they dispute the proper reading of Section XIX of the CIC Policy, which governs extended reporting periods.  Specifically, the parties disagree about Section XIX.E, which states that any extended reporting period terminates upon the "effective date and time of any other insurance issued to the **insureds** which replaces this insurance."  (ECF No. 58-3, at 14).  CIC argues that "no extended reporting period was in effect when the ORT Claim was made because the Chubb Policy had replaced" the CIC Policy.  (ECF No. 67, at 4-5).  The Federation counters that "any other insurance" must cover the same claim to "replace" the original policy.  According to the Federation, "[t]he Chubb policy therefore is 'other insurance' as respects the ORT claim *only* to the extent that it covers the ORT Claim along with the Cincinnati Policy.  It does not." (ECF No. 66, at 3).  As will be discussed, upon review

6

of the submissions of the parties and the plain language of the policy, the phrase "any other insurance" in Section XIX does not require that the "other insurance" specifically cover the same claim. Rather, the Chubb Policy was "any other insurance" that "replace[d]" the CIC Policy, terminating the extended reporting period on August 1, 2020.

### A. Text of Section XIX

"Unless there is an indication that the parties intended to use words in a special, technical sense, the words in a policy should be accorded their 'usual, ordinary, and accepted meaning.'" *Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir. 1995) (quoting *Bausch & Lomb, Inc. v. Utica Mutual Ins. Co.*, 330 Md. 758, 778 (1993)). CIC argues that "[t]he plain meaning of 'any other insurance' is insurance that is separate and distinct from the Cincinnati Policy." (ECF No. 67, at 5). This reading is consistent with the structure of the CIC Policy. In multiple sections of the CIC Policy, the words "any other insurance" are followed by a phrase that clarifies the scope of coverage referenced: "which replaces this insurance" in Section XIX, and "applies to any claim" in Section X.

The overall structure of Section XIX supports this reading. Section XIX.A.1 starts the automatic extended reporting period "immediately after the end of the policy period of the applicable

7

Coverage Part."[2] (ECF No. 58-3, at 20). Neither "Coverage Part" nor "other insurance" are defined in the policy. Section XIX.E, governing the termination of the extended reporting period, does not mention coverage parts. Rather, the extended reporting period terminates when "any other insurance . . . replaces this insurance." The parties provide dictionary definitions of "replace" including "take the place of" from the American Heritage Dictionary of the English Language, (ECF No. 58, at 31), and "supplant with substitute or equivalent" from Black's Law Dictionary, (ECF No. 60, at 17). The extended reporting period is granted to individual coverage parts; any other insurance "replaces" the coverage part when it takes the place of, or substitutes for, the coverage part. In plain English, to replace the coverage part, the separate and distinct policy must provide a similar type of coverage as the coverage part provided. If it does, then the extended reporting period terminates for that coverage part.

The operative coverage part in this dispute is the directors & officers liability coverage. Directors & officers liability ("D&O") coverage is one of the more common coverage types of

---

[2] The optional extended reporting period endorsement to the CIC Policy specifies that the optional period applied to two distinct coverage parts: the employment practices liability coverage part and the nonprofit organization directors & officers coverage part. (ECF No. 58-3, at 4).

professional liability insurance. Jordan R. Plitt, et al., *Couch on Insurance* § 1:35 (3d ed. 2025). Both the CIC Policy and the Chubb Policy provided D&O liability coverage. (ECF No. 58, at 30). Chubb has participated in the defense of the ORT claim because it was "potentially covered" under the Chubb Policy, (ECF No. 66, at 4), further demonstrating that it covers the types of claims covered by the CIC Policy. *See Chicago Title Ins. Co. v. Jen*, 249 Md.App. 246, 266 (2021) ("Maryland law is well settled that the insurer owes a duty to the insured to defend if there is a potentiality that a claim could be covered by the policy."). CIC is correct that "the Chubb D&O Policy was a separate and distinct policy that took the place of the Cincinnati D&O Policy," terminating the extended reporting period. (ECF No. 67, at 5).

**B. Plaintiff's Definition Is Too Narrow**

The Federation argues that "any other insurance" must specifically cover the claim at issue. It supports that argument by citing to case law dealing with "other insurance" clauses. (*See, e.g.,* ECF Nos. 66, at 6 (citing *Empire Fire and Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md.App. 72 (1997)); 68, at 5 (citing *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 60 (1993); *Nat'l Indem. Co. v. Cont'l Ins. Co.*, 61 Md.App. 575, 577-581 (1985))). "Other insurance" clauses "limit an insurer's liability where other insurance may cover the same loss." Jordan R. Plitt, et

9

al., *Couch on Insurance*, § 219:1 (3d ed. 2025).  The clauses are meant to allocate responsibility for a payment in cases of overlapping coverage.  But the phrase "other insurance" is used in multiple ways in the insurance context, and the Federation's attempt to extrapolate the Maryland case law on "other insurance" *clauses* to the current context is unavailing.  In fact, Couch "caution[s] that the concept of 'other insurance' can rapidly become confusing given the number of other contexts in which the term is used."  Jordan R. Plitt, et al., *Couch on Insurance* § 98:1 (3d ed. 2025).  The "other insurance" clause is not at issue here; rather, the parties are disputing an entirely different clause which also has the words "other insurance."  In Section XIX, the phrase "any other insurance" is used only to indicate when the extended reporting period ends, not to allocate coverage over a particular claim.

The Federation's definition of "other insurance," which requires that both insurance policies cover the same claim, would create redundancies in the text of the CIC Policy.  Under Maryland law, courts reviewing contracts "construe the instrument as a whole."  *W. F. Gebhardt & Co., Inc. v. Am. Eur. Ins. Co.*, 250 Md.App. 652, 666 (2021) (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388 (1985)); *see also Baltimore Gas & Elec. Co. v. Com. Union Ins. Co.*, 113 Md.App. 540, 554 (1997)

("A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement."). If the "other insurance" must inherently cover the same claim for it to be a replacement, the phrase "which replaces this insurance" becomes redundant. Rather, "any other insurance" means a separate and distinct policy, and it "replaces" the prior policy by providing a similar scope of coverage.

The Federation's interpretation of "other insurance" would also make a portion of the CIC Policy's "other insurance" clause redundant. Section X of the CIC Policy reads, in relevant part,

> This insurance is primary except when all or any part of **loss** is also insured under any other prior or current policy. If any other insurance issued by another insurer . . . applies to any **claim**, then this insurance is excess over that other insurance[.]

(ECF No. 58-3, at 12). The language "[i]f any other insurance . . . applies to any **claim**" clarifies that the other insurance must apply to the specific claim for the provision to be operative. It would be redundant for Section X to say, "any other insurance [that necessarily applies to the same claim] . . . which applies to any claim." Rather, "any other insurance" refers to a separate insurance policy, which may or may not cover the same claim. The phrase "applies to any claim" is not in Section XIX governing the extended reporting period. Another insurance policy must cover the specific claim for it to be "other insurance" under Section X,

11

but no such overlap is necessary when considering the expiration of an extended reporting period under Section XIX.

The Federation's interpretation would also lead to "absurd results." *See Kapiloff*, 155 F.3d at 495. As CIC has pointed out, requiring the extended reporting period to be dependent on whether another insurance company will cover the claim could create a situation where the extended reporting period ends at different times for different claims, and could even be reinstated depending on another company's coverage decisions. (ECF No. 67, at 17). The Chubb D&O policy began on August 1, 2020, which terminated the CIC Policy's extended reporting period. This clear, predictable termination date follows the plain language of the insurance contract and creates clear expectations for contracting parties.

Because the CIC Policy's extended reporting period was terminated by the Chubb Policy starting on August 1, 2020, there was no extended reporting period active when the Federation submitted the ORT claim to CIC.

### IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant (ECF No. 58) will be granted, and the motion for summary judgment filed by Plaintiff (ECF No. 48) will be denied. The Amended Complaint contains a claim for breach of contract and a request for declaratory judgment. (ECF No. 33, at

12

9-11). Judgment will be entered in favor of CIC on the first, and an appropriate declaration will be entered on the second. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge